# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| HOME AND INDUSTRIAL MECHANICAL SUPPLIES, INC., | Civil Action No.: 4:19-cv-00931-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| CSX TRANSPORTATION, INC., | |
| Defendant. | |

This matter is before the Court on Defendant CSX Transportation, Inc.'s ("CSXT") motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 4. For the reasons set forth below, the Court denies CSXT's motion to dismiss.

## Factual and Procedural Background

This case arises out of a flooding incident that occurred in 2018. *See, generally*, ECF No. 1-2 at 6-11 ("Compl."). Plaintiff Home and Industrial Mechanical Supplies, Inc. ("HIMS"), a South Carolina corporation, is a hardware store which operates from property it owns in Dillon, South Carolina. *Id.* ¶¶ 1, 4. CSXT is a Virginia corporation which owns an embankment behind HIMS's property. *Id.* ¶¶ 2, 5-6.

Previously, in 2016, during Hurricane Matthew, CSXT's embankment failed, storm water was diverted on to HIMS's property, and HIMS's property flooded causing damages. *Id.* ¶ 5. Thereafter, CSXT reconstructed the embankment. *Id.* HIMS alleges CSXT "failed to properly develop and implement a drainage solution to prevent a subsequent collapse of its embankment." *Id.* ¶ 7. HIMS further claims CSXT "failed to properly install a culvert, drain pipe, drainage solution, or proper rail drainage system for the embankment following the 2016 events to prevent the subsequent embankment

failure and resulting damages . . . ." *Id.* ¶ 8.

In September, 2018, Hurricane Florence moved through Dillon, South Carolina. *Id.* ¶ 6. CSXT's embankment again failed, and HIMS's property was flooded. *Id.* HIMS's real property, personal property, inventory, and business operations were significantly damaged as a result of the embankment failure and resultant flooding. *Id.*

On February 21, 2019, HIMS filed suit against CSXT in the Court of Common Pleas for Dillon County, South Carolina. Compl. HIMS's complaint brought causes of action against CSXT for: 1) nuisance; 2) negligence and gross negligence; 3) negligent hiring, training, supervision and retention; and 4) trespass. *Id.* On March 28, 2019, CSXT timely removed to this Court. ECF No. 1.

On April 2, 2019, CSXT filed the instant motion to dismiss. ECF No. 4. On May 7, 2019, HIMS responded, ECF No. 9; CSXT replied on May 22, 2019, ECF No. 13. This matter is thus ripe for decision.

## **Legal Standard**

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint . . . considered with the assumption that the facts alleged are true[.]" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). The Court measures legal sufficiency by determining whether the complaint meets the Rule 8 standards for a pleading. *Id.* Rule 8 requires, in pertinent part, that a claim for relief contain a "statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

When reviewing a motion under Rule 12(b)(6), the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

However, the Court need not accept as true allegations that are contradicted by exhibits to the complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. A complaint need not assert "detailed factual allegations"; however, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555 (citations omitted). Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## Discussion

CSXT moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss HIMS's complaint in its entirety. ECF No. 4. In support of its motion, CSXT first argues HIMS's claims against it are preempted by the Interstate Commerce Clause Termination Act ("ICCTA"). ECF Nos. 4 at 1; 4-1 at 2, 4-10; 13 at 1-8. According to CSXT, all HIMS's causes of action also fail because HIMS insufficiently alleges CSXT caused HIMS's damages. ECF Nos. 4 at 2; 4-1 at 2, 4-5, 16-17; 13 at 14-15. CSXT next advances because South Carolina follows the common enemy rule regarding surface water, CSXT had no duty to prevent water from running on to HIMS's property, and thus HIMS's negligence claims[1] fail. ECF

---

[1] CSXT refers to both negligence claims (which would presumably include both HIMS's negligence and gross negligence and its negligent hiring, training, retention and supervision causes of action), *see* ECF No. 4-1 at 10, and to a negligence action (which would presumably include only the negligence and gross negligence cause of action), *see* ECF No. 4 at 1. Assuming *arguendo* CSXT only intended this argument to apply to the negligence and gross

3

Nos. 4 at 1; 4-1 at 1-2, 4, 10-15; 13 at 8-13. In relation to HIMS's nuisance and trespass claims, CSXT avers those claims fail because HIMS failed to show sufficient action to plead those causes of action. ECF No. 4 at 1; 4-1 at 2, 4-5, 15-17; 13 at 11-14. HIMS responds that its claims are not expressly preempted by ICCTA, it is premature to decide at this stage whether ICCTA impliedly preempts HIMS's claims, and its allegations are sufficiently well pled to withstand CSXT's motion to dismiss. ECF No. 9. Accordingly, HIMS argues the Court should deny CSXT's motion to dismiss. *Id.* The Court will examine each of CSXT's arguments in turn.

I. **Preemption**

CSXT argues the ICCTA preempts all of HIMS's claims, and thus HIMS's complaint is due to be dismissed. ECF Nos. 4 at 1; 4-1 at 2, 4-10; 13 at 1-8. HIMS responds that its claims are not expressly preempted by the ICCTA, and it is too early to decide whether the ICCTA preempts HIMS's causes of action. ECF No. 9 at 1-2, 4-11. The Court agrees with HIMS: it is premature to decide whether ICCTA preempts HIMS's claims.

The purpose of the ICCTA was to replace the Interstate Commerce Commission with the Surface Transportation Board ("STB"). *PCS Phosphate Co., Inc. v. Norkfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009). The "general jurisdiction" provision of the ICCTA also contains a preemption provision as follows:

> The jurisdiction of the [STB] over-
> (1) transportation by rail carriers, and the remedies provided in this part with respect to

---

negligence cause of action, the Court finds that if the argument succeeds as to that cause, the negligent hiring, training, retention and supervision cause of action likewise fails. In its claim for negligent hiring, training, supervision and retention, HIMS generally alleges CSXT failed to properly hire, train, supervise, and retain employees to competently design, construct, and maintain the embankment. *See* Compl. HIMS's negligent hiring, training, supervision and retention cause of action is thus dependent upon its negligence cause of action. If there was no negligence in designing, constructing and/or maintaining the embankment, CSXT was also not negligent in hiring, training, retaining and supervising the employees who worked on the embankment.

4

> rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

Though the ICCTA's preemption language is broad, the Fourth Circuit has noted that "'Congress narrowly tailored the ICCTA preemption provision to displace only "regulation," i.e. those state laws that may reasonably be said to have the effect of "managing" or "governing" rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation.'" *PCS Phosphate Co., Inc.*, 559 F.3d at 218 (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001)). While the ICCTA's express preemption clause focuses on "regulation," the Fourth Circuit has recognized that a claim may be impliedly preempted if it "'unreasonably interfere[s]' with rail transportation." *Id.* at 220-21.

Like other circuits analyzing preemption and the STB, the Fourth Circuit has noted that "the determination of whether the action constitutes an 'unreasonable interference' *requires a factual assessment of the effect of providing the claimed remedy*. *Id.* at 221 (emphasis added); *see also Tubbs v. Surface Transp. Bd.* 812 F.3d 1141, 1146 (8th Cir. 2015) (indicating that deciding whether a state-law claim unreasonably burdens or interferes with rail transportation is a fact-specific analysis); *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1133 (10th Cir. 2007) (quoting *CSX Transportation, Inc.–Petition for Declaratory* Order, STB Finance Docket No. 34662, 2005 WL 1024490, at *3 (Surface Transp. Bd. May 3, 2005)) (agreeing with and adopting the STB's standard that "to decide whether a state regulation is preempted 'requires a factual assessment of whether that action would

5

have the effect of preventing or unreasonably interfering with railroad transportation.'").

Having carefully reviewed the briefing of the parties and the relevant law, the Court finds it is unable to conclude at this early juncture - before the facts in this case have been fully developed - that HIMS's claims are preempted by the ICCTA. As noted, at this stage all factual disputes are to be resolved in HIMS's favor. Further, the STB recently clarified that in order to determine whether a claim is subject to either categorical (express) preemption or applied (implied) preemption:

> the Board or a court must know the basic facts about the party's claims. Those basic facts enable the Board or a court to determine whether the state or local action falls within a category subject to categorical preemption, or is subject to as applied preemption, or is not subject to preemption at all.

*CSX Transp., Inc. - Pet. For Decl. Order*, Docket No. FD 35832, 2016 WL 787578, at *4 (S.T.B. Feb. 29, 2016) (upholding the denial of a declaratory order regarding ICCTA preemption and allowing state-court claims related to a flood to proceed). The STB indicated that the facts would need to be fully developed through discovery before determining whether claims are preempted. *Id.*, at *4-5.

For the above reasons, this Court finds it would be premature to find at this juncture that HIMS's causes of action are preempted by the ICCTA. Accordingly, the Court will deny CSXT's motion to dismiss on this ground.

## II.   Causation

CSXT argues HIMS's causes of action all require an element of causation. ECF Nos. 4 at 2; 4-1 at 2, 4-5, 16-17; 13 at 14-15. CSXT further advances HIMS failed to allege or plausibly infer CSXT proximately caused HIMS's damages, and thus CSXT's motion to dismiss is due to be granted. *Id.* HIMS contends it sufficiently pled causation. ECF No. 9 at 20-22.

CSXT is correct: all the causes of action pled by HIMS require causation as an element of the claim. *Andrade v. Johnson*, 588 S.E.2d 588, 592 (S.C. 2003) ("In a negligence action, a plaintiff must

6

show . . . (3) defendant's breach was the actual and proximate cause of the plaintiff's injury . . . ."); *Ravan v. Greenville Cty.*, 434 S.E.2d 296, 306 (S.C. Ct. App. 1993) ("nuisance requires the [plaintiff] to demonstrate that the [defendant] unreasonably interfered with [his] ownership or possession of the land."); *Snow v. City of Columbia*, 409 S.E.2d 797, 802 (S.C. Ct. App. 1991) (stating for trespass to be actionable, *inter alia*, "the harm caused must be the direct result of [the] invasion [of the land].").

While CSXT is correct that each of the causes of action pled here requires an element of causation, having reviewed the complaint in this case, the Court holds HIMS has sufficiently alleged CSXT caused its damages to withstand CSXT's motion to dismiss. In essence, HIMS's allegation is that CSXT rebuilt and/or maintained its embankment incorrectly or insufficiently, which led the embankment to fail when Hurricane Florence passed through Dillon, resulting in flooding which caused damage to HIMS. Compl. ¶¶ 5-8. At the motion to dismiss stage, those allegations are sufficient to show the causation required to withstand CSXT's motion to dismiss. For that reason, the Court will deny CSXT's motion to dismiss as to insufficiently pled causation.

### III. No Duty to Act

CSXT advances South Carolina imposes no liability for acts of God, such as the hurricane which struck Dillon, and thus CSXT had no duty to protect HIMS from the hurricane. ECF Nos. 4 at 2; 4-1 at 14-15; 13 at 8-9. CSXT further argues South Carolina follows the common enemy rule, and none of the exceptions apply here, so it had no duty to protect HIMS from the flow of water onto its property. ECF Nos. 4 at 1; 4-1 at 1-2, 4, 10-14; 13 at 9-13. Because HIMS is unable to show CSXT had such a duty, CSXT argues HIMS's claims[2] for negligence fail. *Id.* HIMS recognizes South

---

2  *See, supra,* n.1.

7

Carolina follows the common enemy rule, but avers it has sufficiently pled a duty to properly maintain the embankment to control the flow of storm water, and argues the duty it pled falls within the exceptions to the common enemy rule. ECF No. 9 at 12-15.

To state a claim for negligence in South Carolina, "a plaintiff must show the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages." *Andrade*, 588 S.E. 2d at 592. Thus, if plaintiff fails to allege defendant owed a duty to plaintiff, he has failed to state a claim for negligence.

CSXT is correct: South Carolina does not generally impose liability for acts of God; there is an exception, however, when the harm resulted not just from an act of God, but also from something defendant did or failed to do. *Montgomery v. Nat'l Convoy & Trucking Co.*, 195 S.E. 247, 251-52 (S.C. 1938) (stating defendant is not "liable for damages caused by the act of God, if such act is the direct or proximate cause of the injury. . . . However, 'act of God' is a valid defense only when it is the sole cause of the injury.") (internal citation omitted). Here, HIMS does not allege Hurricane Florence was the sole cause of its injuries, but that Hurricane Florence combined with CSXT's failure to build and/or maintain an adequate embankment led to the flooding which caused its injuries. HIMS's claims for negligence are thus not barred because the hurricane was an act of God.

Regarding surface water - like the rain water at issue here - South Carolina has long recognized the common enemy rule.

> Under the common-law rule, surface water is regarded as a common enemy, and every landed proprietor has a right to take any measures necessary to the protection of his own property from its ravages, even if, in so doing, he throws it back on a coterminous proprietor, to his damage, which the law regards as a case of damnum absque injuria, and affording no cause of action.

8

*Edwards v. Charlotte, Columbia & Augusta R.R. Co.*, 18 S.E. 58, 59 (S.C. 1893). South Carolina recognizes two exceptions to this rule. *Glenn v. Sch. Dist. No. Five of Anderson Cty.* 366 S.E. 2d 47, 49 (S.C. Ct. App. 1988). First, "a landowner may not use his land in a manner to create a nuisance," and second, "he may not discharge water in concentrated form upon his neighbor's land." *Id.*

HIMS argues its allegations that CSXT failed in its duty to properly construct and/or maintain the embankment and thus chanelled surface water on to HIMS's property, fall squarely within these exceptions. ECF No. 9 at 12-15. CSXT raises three arguments in response. First, CSXT says it had the right to construct its embankment, and thus is not liable to HIMS. ECF No. 13 at 9-10. Second, CSXT advances its embankment does not constitute an artificial channel so as to qualify for the second exception to the common enemy rule. *Id.* at 10-11. Finally, CSXT argues the water alleged to have flowed on to HIMS's property does not constitute nuisance per se, so HIMS's claim does not fall within the nuisance exception to the common enemy rule. *Id.* at 11-13. These arguments are unavailing.

Assuming without deciding CSXT had "the right to build its embankment," it must construct the embankment with due care or face potential liability for negligence. *See Johnson v. Charleston & W. Carolina Ry.*, 50 S.E. 775, 776 (S.C. 1905) (indicating a plaintiff may seek damages for negligent construction of an embankment). HIMS's allegation is that CSXT negligently designed, constructed and/or maintained the embankment, and said flaws led the embankment to fail leading to the flooding of HIMS's property.

Although CSTX advances its embankment was not the sort of artificial channel for water contemplated in the second exception to the common enemy rule, the Court disagrees. HIMS alleges CSXT's purported failures in constructing the embankment led to the "concentrated flow of storm

9

water onto [HIMS's] property . . . ." Compl. ¶ 11.³ Taken in the light most favorable to HIMS, it has stated a claim for the type of conduct prohibited under the second exception to the common-enemy rule.

Because HIMS's allegations fall within the common enemy rule's exception for channeling water, the Court need not address CSXT's argument regarding the level of nuisance necessary for the nuisance exception to apply. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage, thus, the strength of the first makes all the rest *dicta*."). For the above reasons, CSXT's motion to dismiss is due to be denied as to HIMS's failure to show a duty to act.

IV. **Insufficient Action for Nuisance or Trespass**

CSXT alleges HIMS fails to show enough action to support its nuisance or trespass claims. ECF Nos. 4 at 1; 4-1 at 15-16; 13 at 11-14. Specifically, CSXT advances HIMS's nuisance claim fails because HIMS alleges not that CSXT acted, but that it failed to act. ECF No. 4-1 at 15-16. CSXT argues HIMS's trespass action fails because: (1) HIMS fails to allege action on the part of CSXT; (2) CSXT cannot be liable for trespass because it had the right to construct the embankment; (3) HIMS fails to show CSXT had the intent to trespass; and (4) there was no trespass because the flooding occurred during a torrential rainfall. ECF Nos. 4-1 at 15-16; 13 at 13-14. HIMS responds that it sufficiently pled its nuisance and trespass causes of action. ECF No. 9 at 16-20. The Court agrees with HIMS.

---

³ The Court notes this allegation falls within the section of HIMS's complaint dedicated to the nuisance cause of action. It is, however, relevant to the negligence claims, especially in light of the fact that under South Carolina's common enemy rule, nuisance can be an exception to the general prohibition on liability for disposing of surface water. *See Ravan*, 434 S.E.2d at 307 n. 4 ("A nuisance presupposes negligence in many instances, if not in most, and the two torts may be coexisting and practically inseparable if the acts or omissions constituting negligence create a nuisance.")

10

"[P]rivate nuisance requires the [plaintiff] to demonstrate that the [defendant] unreasonably interfered with [its] ownership or possession of the land." *Ravan*, 434 S.E.2d at 306. As a preliminary matter, the Court notes CSXT provides no law supporting the proposition that nuisance requires an act rather than a failure to act. Even assuming nuisance requires such an affirmative act, as analyzed above, HIMS has sufficiently pled CSXT's actions in negligently designing, constructing and/or maintaining the embankment led to the flooding that interfered with HIMS's use of its hardware store. As a result, HIMS has sufficiently pled its nuisance cause of action to withstand CSXT's motion to dismiss.

"The unwarrantable entry on land in the peaceable possession of another is a tresspass . . . ." *Snow*, 409 S.E.2d at 802. "To constitute an actionable trespass, however, there must be an affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion." *Id.* "Intent is proved by showing that the defendant acted voluntarily and that he knew or should have known the result would follow from his act." *Id.* The plaintiff need not show "deliberation, purpose, motive, nor malice" on the part of the trespasser; indeed, the trespasser "need not intend or expect the damaging consequences of his entry, [but to be liable for trespass] he must intend the act which constitutes the unwarranted entry on another's land." *Id.*

HIMS alleges CSXT failed to properly construct and/or maintain the embankment and that failure led to the unwarranted entry of water on to HIMS's property. Further, based upon CSXT's earlier experience with the embankment during Hurricane Matthew, HIMS avers CSXT knew or should have known its embankment would fail resulting in flooding of HIMS's property. Accordingly, at this stage in the proceedings, HIMS has sufficiently alleged both the action and the intent necessary to state a claim for trespass.

11

To the extent CSXT claims it is not liable for trespass because it had the right to construct the embankment, that argument is unavailing. The trespass alleged here is not the construction of the embankment *per se*, but the flooding of water on to HIMS's property resulting from the purportedly faulty embankment. Further, while South Carolina does not generally allow a trespass claim for construction of an embankment a railroad has the right to construct, that rule assumes the construction was undertaken with due care. *Johnson*, 50 S.E. at 776. The basis of the claims here is that CSXT failed to use due care in constructing and maintaining the embankment.

Finally, CSXT's contention that HIMS's trespass action will not lie because the flooding complained of occurred during a hurricane is likewise without merit. As explained above, the allegations here are not merely that the hurricane caused the flooding, but that the faulty embankment failed channeling hurricane rainwater onto HIMS's property. For these reasons, the Court holds HIMS has sufficiently stated a claim for trespass, and CSXT's motion to dismiss is due to be denied as to HIMS's trespass cause of action.

## Conclusion

In summary, the Court holds it would be premature at this stage of the proceedings to determine whether HIMS's claims are preempted by the ICCTA. Further, HIMS has sufficiently pled its causes of action to survive CSXT's motion to dismiss. For those reasons, the Court **DENIES** CSXT's motion to dismiss. ECF No. 4.

**IT IS SO ORDERED.**

Florence, South Carolina  
July 22, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
Chief United States District Judge